Curia, per
Nott, J.
If we are to judge of the intention of the testatrix in this case from the face of the will, it appears to me that there cannot be two opinions on the subject. I think that no one can doubt that it was intended that the survivorship should relate to the death of the tenant for life, and not to the death of the testatrix. And that seems to be the great question in all the cases of this description. There are cases where the survivorship has been held to relate to the death of the testator; but in the case of Russel v. Long, 4 *Ves. 554, Lord Tiiurlow is represented to have said that it was an unnatural construction; and in the *591 same case the master of the rolls says, he thinks that construction is not to be adopted if any other can be. Lord Hardwicke uses the same language in the case of Hawes v. Hawes, 3 Atk. Rep. 526, and adds that it ought not to be resorted to where any other reasonable construction can be put upon these words. The principal cases where the survivorship has been construed to relate to the death of the testator are, Lord Bindon v. Earl of Suffolk, 1 P. Wms. 96. Stringer v. Phillips, 1 Eq. Ca. Abr. 292. Rose v. Hills, 3 Burrows, 1881, and Drayton v. Drayton, 1 Desaus. Rep. 324. But in all those cases where a life intervenes, the specific object of a testator’s bounty who is to take upon the determination of the first life is particularly mentioned by name. In the first case, of Bindon v. Suffolk, there was no life estate upon the termination of which the legacy should vest; nor was there any time mentioned when it should be paid. But it was given to his five grand-children by name, share and share alike, to be equally divided between them, and if any of them died, then his share to go to the survivors or survivor of them. One of the legatees died after the testator, but before any of the money was paid, and the question was whether his share went to the survivors or his representatives. Lord Chancellor Cowper held that it should be paid to his representatives, for that he must give such construction to the will that every word might take effect if possible, and that as no particular time was mentioned to which the survivorship should relate, it must refer to the death of the testator, otherwise the words of the will which relate to the deceased legatee would be inoperative. The case of Stringer v. Phillips is nowhere so fully reported, that I can find, as to ^enable us to ascertain what the words of the will were. I should not, therefore, have considered it of much authority, if I had not found it so often referred to as such in other cases. By the words of the decree, as given in a note to the case of Bindon v. Suffolk, it would appear that the legacy was given to five persons to be equally divided between them, &c., after the termination of a life estate. The time of survivorship might therefore have been referred to the death of the tenant for life. But then, if one of the legatees had died during the life of the first taker, the bequest to him must have failed, and therefore, in order to give effect to those words, it became necessary to refer the survivorship to the death of the testator, as in the case of Bindon v. Suffolk.
The case of Rose v. Hill, 3 Burr. 1881, depended upon the same principle, though there were other circumstances which aided the construction. The case of Roebuck v. Dean, 4 Bro. C. C. 403, ivas decided upon another principle. In that case the legacy was clearly vested in the trustees for the use of a niece of the testatrix during her life, and then over. The legacy clearly vested in the trustees at the death of the testatrix, and could not be divested by the death of one of the persons for whose use it was intended, but still remained in the trustees for the use of the representatives of such deceased legatee.
In the case of Drayton v. Drayton, 1 Desaus. Rep. 324, the testator gave certain lands to his son John, and if he should die during his minority, then to his four sons, William Henry, Charles, Glen, and Thomas, or to the survivors of them. John died during his minority and without issue. William Henry survived the testator, but died *592 before John. The question was, whether the representatives of William Henry should take the part which would'have fallen to him if he survived *his brother, or whether it would go to the three survivors. The court were of opinion that the share given to William Henry should go to his representatives. And the principal ground of decision was, because the legacy was given to the four surviving sons byname; and although in the last bequest the testator made use of the words surviving brothers, without naming them, yet as the intention appeared to be the same, the court gave it in the same construction, — intimating thereby that if both clauses had mentioned the surviving brothers, without any specification of their names, the construction would have been otherwise.
In the case now under consideration, the testatrix has given the property in question to her daughter for life, and after her death to her surviving children. She does not give anything to Hugh Swinton and others by name, as in all the cases referred to, but to the survivors only.
The probability is, that the testatrix gave the property in that way for the purpose of taking in such as might be afterwards born, as well as those then in esse. It is presumed that she intended to put all her grandchildren on the same footing. But unfortunately the will is so worded, that either those who should die during the continuance of the life estate or those who should be born after her own death must be excluded. We must, therefore, refer the survivorship to that period of time which best comports with the grammatical construction of the words, unless controlled by some other words manifesting a different intention. But none such are found in this will. We give effect to every word of the will, without resorting to the unnatural construction contended for by the complainants. This construction also gives effect to the apparent intention of the testatrix, without disturbing any of the decided cases which have been relied on. This, it will be observed, was a Provision* for her grand-children, in which case it is much more natural to suppose the testatrix would have regard to those who should survive their own mother than herself. In Drayton v. Drayton, the court appear to rely on the circumstance that the limitation over was to the “survivors” in the plural number, and conclude that if but one of the brothers had survived, the legacy would have lapsed. But that reasoning cannot be supported either by principle or authority. Where property is given to a class of persons and not by name, it will take in all who shall answer the description at the time the gift shall take effect, and if there be but one, though it be expressed in the plural number, that one will take. Lessee of Stewart v. Sheffield, 13 East, 527. 6 Dow’s Parl. Cases, 35, 37, 53. If, therefore, the tenant for life had left but one surviving child, that one would have been entitled to the whole legacy. If the legacy had been given to Hugh Swinton and to his brothers and sisters by name, or to the survivors of them, it might, perhaps, have been brought within the principle of some of the cases referred to. If it had been given over to the children of Mrs. Swinton generally, it would probably have embraced the complainants’ ancestor, as well as the after-born children, if there were any. But being given to her during life “and after her death to be divided among her surviving children,” it must necessarily relate only to those who were living at the time of her death.
*593 The decree must therefore he reversed and the bill dismissed with costs.
Decree reversed.(a)

 See on the important subject whether a devise to grand-children comprehends any other than those in esse at the death of the testator, in the important case of Myers v. Myers, ante, page 214.